## Registration of State Institution Employes

MARGIOTTI, Attorney General, September 1, 1937. — You have asked to be advised whether section 18(g) of The Permanent Registration Act for Boroughs, Towns, and Townships of April 29, 1937 (no. 115), prohibits individuals employed at State institutions from being registered in the borough or township in which they live while working at these institutions, if such individuals lived in other localities before entering into such employment.

Section 18(g) of the act provides, in part:

"(g) Any person employed in the service of this Commonwealth or in the service of the Federal Government, and required thereby to be absent from any borough, town or township wherein he resided when entering such employment, his wife, or her husband, shall be registered as of the district wherein he or she shall have resided immediately prior to entering such service, and be enrolled as a member of the political party he or she designates without declaring a residence by street and number."

It is clear that the answer to the question now before us depends upon whether the above-quoted portion of the act is to be construed as mandatory or directory. It is true that the words "shall be registered" are used and that the word "shall" is often deemed to be a word of command. There is an established rule of statutory construction which must be kept in mind in this connection, however. This rule is well expressed in 59 C. J. 1085:

"The word 'shall' may be construed as merely permissive, where the language of the statute as a whole, and its nature and object, indicate that such was the legislative intent, and where no public benefit or private right requires it to be given an imperative meaning."

In determining the intent of the legislature in adopting this provision, it is fitting that we consider briefly certain pertinent constitutional provisions and the decisions which have been handed down thereunder.

Article VIII, sec. 1, of the Constitution of Pennsylvania, as amended November 7, 1933, P. L. 1559, provides:

"Every citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections, subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.

"1. He or she shall have been a citizen of the United States at least one month.

"2. He or she shall have resided in the State one year (or, having previously been a qualified elector or native born citizen of the State, he or she shall have removed therefrom and returned, then six months) immediately preceding the election.

"3. He or she shall have resided in the election district where he or she shall offer to vote at least two months immediately preceding the election."

Article VIII, sec. 13, of the Constitution of Pennsylvania provides:

"Section 13. Residence of electors.

"For the purpose of voting no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this State or of the United States, nor while engaged in the navigation of the waters of the State or of the United States, or on the high seas, nor while a student of any institution of learning, nor while kept in any poorhouse or other asylum at public expense, nor while confined in public prison."

Section 18(g) of The Permanent Registration Act was undoubtedly enacted in view of the provisions of article VIII, sec. 13, and was designed to execute those provisions. It should, therefore, be interpreted in conformity with the accepted interpretation of article VIII, sec. 13.

Shortly before the adoption of our present Constitution, the Supreme Court of Pennsylvania decided the case of Fry's Election Case, 71 Pa. 302 (1872). In that case the question before the court was whether students at Muhlenberg College were entitled to vote in the city in which the college was located. The court discussed at length the residence qualification for voting under the provisions of article III, sec. 1, of the Constitution of 1838, and defined this requirement as follows:

"It means that place where the elector makes his permanent or true home, his principal place of business, and his family residence, if he have one; where he intends to remain indefinitely, and without a present intention to depart; when he leaves it he intends to return to it, and after his return he deems himself at home."

Applying this principle, the court held that ordinarily college students did not have voting residence in the city in which the college was located.

Article VIII, sec. 1, of the Constitution of 1874 does not differ materially from article III, sec. 1, of the Constitution of 1838 in the manner of the use of the term "residence", and it is safe to say that the elements of a "voting residence" within this Commonwealth are the

same as those of a "domicile", as that term is used in legal phraseology, and that the mere fact that a citizen is living in a certain district does not entitle him to vote therein.

When the Constitution of 1874 was drafted, and article VIII, sec. 13, was added thereto, it was not designed to inaugurate any change in the established law relative to the voting residence of citizens. In fact, article VIII, sec. 13, merely affirmed the principle laid down in the case of Fry's Election Case, supra, where it was stated that although a person is living in a certain district he has not necessarily established a voting residence or domicile therein. Indeed, the Chairman of the Committee on Suffrage, from whom came article VIII, sec. 13, made the following statement relative to it:

"This section (the thirteenth) is not intended to alter the legal construction of the preceding section (which prescribes residence as a qualification for voting). It is simply explanatory, not necessary for a lawyer, but presumed to be necessary for the guidance of election boards".

Thus, it is clear that article VIII, sec. 13, was intended to have no greater effect than would result from an application of the established principles of the law of domicile, such as are outlined in the case of Fry's Election Case. Under such an interpretation the mere fact that an individual lives in the locality where he is employed by the State does not affect his previously acquired voting residence, but if the other elements of domicile also exist at the place of his employment he is entitled to vote there. Support for this interpretation is found in several cases involving the right of students to vote in the locality in which they are attending college, which were decided shortly after the adoption of our present Constitution.

In the case of Lower Oxford Contested Election, 1 Chester 253 (1875), 25 votes had been cast by students at Lincoln University, but these votes were challenged on the ground of nonresidence. In discussing the eligibility

of students to vote under article VIII, sec. 13, the court made the following comments:

"Students may, therefore, still acquire residence in this State, as qualification for voting, while at institutions of learning. But the burden of proving such residence is, of course, on those who set it up. And, as we have before stated, presence at the institution, even for years, does not, of itself, tend to prove it. There must be evidence of complete abandonment of the former residence, or the absence from it will be regarded as temporary."

In the case of In re Lower Merion Election, 1 Chester 257 (1880), an application had been made to strike off the names on the assessment list of students in the Seminary of St. Charles Borromeo. The court held that in proper cases students were entitled to vote in the locality in which they were attending college, making the following statement:

"So it is with a student. He may intend to go elsewhere when his studies are over: but, if he has no other home while present at the institution, if he has no fixed place to which he intends to go when his under-graduate period is over, if he elects to become a citizen in the district of his alma mater, and does become such citizen, he has the right to vote,—if the election board is satisfied as to the bona fides of his intent. Of this intent they are the primary judges; and it is for them, and not for the court, at this time, to decide the question in each individual case."

The principles enunciated in these two cases, as applicable to students, are equally applicable to persons in the State service.

In 20 C. J. 74 the following statement appears:

"The fact, however, that a person does not gain or lose residence merely by reason of his presence or absence while in the service of the government does not prevent him from otherwise gaining a residence at the place so employed."

In the case of In re Cunningham et al., 45 Misc. 206, 91 N. Y. Supp. 974, in discussing an analogous constitu-

tional provision relative to employment in the service of the United States, the court stated that it was "aimed at the participation of an unconcerned body of men in the control through the ballot box of municipal affairs in whose further conduct they have no interest, and from the mismanagement of which by the officers their ballots might elect they sustain no injury. Its effect is not to disqualify such persons from gaining or losing a residence, but renders the fact of sojourn or absence impotent as evidence either to create or destroy it; in other words, presence or absence has primarily no effect upon the political status of such person. The question in each case is still, as it was before the adoption of this provision of the Constitution, one of domicile or residence, to be decided upon all the circumstances of the case."

In view of the foregoing considerations, we are of the opinion that the legislature intended section 18($g$) of The Permanent Registration Act to be directory rather than mandatory in nature, and that it does not prohibit an individual employed at a State institution from being registered in the borough or township in which the institution is located, in proper cases. Any other interpretation would be contrary to the spirit of the aforementioned constitutional provision and to a line of decisions of long years' standing. Moreover, article VIII, sec. 1, and article VIII, sec. 13, of the Constitution of Pennsylvania in effect guarantee to the citizens of Pennsylvania the right to vote in the districts in which they are domiciled, and to construe section 18($g$) of The Permanent Registration Act so as to prohibit individuals employed in State institutions from being registered in the locality in which the institution is located, even though they in fact established a domicile there, might well be held to be an unconstitutional interpretation.

You are advised, therefore, that section 18($g$) of The Permanent Registration Act of April 29, 1937 (no. 115), does not prohibit individuals employed at State institutions who have in fact established their domicile in the

locality in which they are employed from being registered in such locality. Whether or not such individuals have actually established a domicile in such places is a question of fact which must be decided under the circumstances of each situation. In order to be entitled to register, these individuals should be required to establish that they have adopted a permanent residence at the place of employment, in which they mean to abide and become citizens until duty, absence, moral obligations, contract relations or convenience compels or induces them to select new homes as their places of domicile.